IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| CRAIG E. ELLINGSON, *et al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ANTHONY C. PIERCY, *et al.*, ) <br> ) <br> Defendants. ) | Case No. 2:14-cv-04316-NKL |

**ORDER**

Before the Court are the Defendants' Motions for Summary Judgment [Docs. 228, 230, 233, 235]. In these motions, the Defendants move for summary judgment on the following counts: Defendant Piercy on Counts I and III; Defendants Replogle, Johnson, Kindle, and Clardy on Count II; Defendants Kindle, Clardy, Harris, Fick, and Stacks on Count III; Defendants Barbour, Echternacht, and McCullough on Counts II, III, and VI; and Defendants Eberhard and Herndon on Counts III and VII.

The Court granted a bifurcated briefing schedule on these motions. [Doc. 265]. In an order entered on June 29, 2016, the Court addressed Counts I, II, VI, and VII. [Doc. 292]. The Court now turns to the Defendants' motions for summary judgment on Count III.

For the following reasons, the Defendants' motions for summary judgment on Count III are granted.

1

## I. Background

The following facts are uncontroverted for purposes of this order.

Following Brandon Ellingson's death, Defendants Kindle, Stacks, Eberhard, McCullough, Replogle, Herndon, and Harris were involved in the Missouri State Highway Patrol's investigation of Defendant Piercy's actions. [Doc. 275-9, p. 8; Doc. 275-25, p. 3; Doc. 275-6, p. 17; Doc. 275-17, p. 2; Doc. 275-20, p. 2]. Defendant Stacks was appointed to lead the investigation, and in this capacity he helped prepare evidence and witnesses in advance of the coroner's inquest, [Doc. 275-9, p. 7], which was conducted by Dr. M.B. Jones with assistance from Amanda Grellner, the special prosecutor then assigned to the case, *see* [Doc. 287].

During the investigative process, some information about Piercy's training and Brandon's drowning was ignored, other information was not preserved, and certain evidence was not chosen for presentation to the jury at the inquest. [Doc. 275-18, p. 16; Doc. 275-35, pp. 17-28; Doc. 275-6, pp. 18-19; Doc. 275-17, pp. 2, 8-9]. Plaintiffs particularly note that evidence about the speed of Piercy's boat, video conversations between Piercy and his supervisors, and a video recreation of the incident were all omitted from the inquest; that several potential witnesses—including Sergeant Randy Henry—were not asked to testify; and that changes were made to an accident report prepared by the MSHP. [Doc. 275-18, pp. 22-23; Doc. 297-2, pp. 19, 39-40; Doc. 297-9, p. 1].

The inquest was held on September 4, 2014 and resulted in a jury verdict finding that Brandon's death was caused by accidental drowning. [Doc. 297-7, p. 1]. On

2

September 8, Grellner informed Replogle that no formal criminal charges would be filed against Piercy. [Doc. 297-10, p. 2]. Three months later, on December 5, 2014, Plaintiffs filed their present civil suit. *See* [Doc. 1].

**II.     Discussion**

In Count III of their complaint, Plaintiffs allege that the Defendants conspired to deprive them of their constitutional rights in the aftermath of Brandon's death. The purpose of this conspiracy, Plaintiffs contend, was "to cover up the cause of Brandon's death while in the custody of Defendant Piercy and the Missouri State Highway Patrol, in order to deprive the Plaintiffs of their constitutional rights, including but not limited to their right to seek redress for their grievances through the courts, right to equal protection under the law, and right to due process of law." [Doc. 45, p. 22, ¶ 111]. Accordingly, Plaintiffs assert a civil conspiracy claim under 42 U.S.C. §§ 1983, 1985, and 1986.

The Court has already dismissed Plaintiffs' claims under Sections 1985 and 1986 as alleged against Defendants Piercy, Kindle, Clardy, and Stacks. [Doc. 241]. Defendants McCullough, Echternacht, Barbour, Eberhard, Herndon, Harris, and Fick now move for summary judgment on the Section 1985 and Section 1986 claims. All Defendants move for summary judgment on Plaintiffs' conspiracy claim under Section 1983. In their arguments, citing Federal Rule of Civil Procedure 56(a), the Defendants maintain there is no genuine dispute regarding any material fact and they are entitled to judgment as a matter of law.

**A.  Section 1983**

To state a Section 1983 conspiracy claim, a plaintiff must allege "that the defendant conspired with others to deprive him or her of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured the plaintiff." *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999). Further, "[t]he plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a [Section] 1983 civil conspiracy claim." *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008).

Plaintiffs argue that the Defendants deprived them of access to the courts, a right recognized under the Constitution.[1] *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Although Plaintiffs have filed this lawsuit and are prosecuting it, a party may nevertheless be denied access to the courts where the defendants conspire to chill, delay, or otherwise "frustrate" that access. *Id. See also Scheeler v. City of St. Cloud*, 402 F.3d 826, 830 (8th Cir. 2005) ("This right applies not only to the actual denial of access to the courts, but also to situations in which the plaintiff has been denied meaningful access by some impediment put up by the defendant."). The Court addressed this preliminary issue in its order on Defendant Piercy's motion for partial judgment on the pleadings. [Doc. 241]. In rejecting Piercy's argument that Plaintiffs could not allege a conspiracy claim, the Court wrote:

> While Plaintiffs ultimately accessed the courts by filing their present suit, that outcome is not dispositive. Rather, because "[a]n individual is entitled to free and unhampered access to the courts," his right of access may be

---

[1] In their complaint, Plaintiffs also allege they were deprived of their "right to equal protection under the law, and right to due process of law." [Doc. 24, p. 18]. However, Plaintiffs have not contested the Defendants' present motions for summary judgment on those grounds.

4

violated where officials act to "intimidate or chill his exercise of that right." *Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1428 (8th Cir. 1986) (internal quotations omitted). Regardless of whether the Defendants' alleged conspiracy succeeded, Plaintiffs claim that the Defendants acted to chill their access to the courts, conspiring to cover up Brandon's death for the purpose of preventing Plaintiffs from bringing a civil suit. Moreover, Plaintiffs argue they were injured because the Defendants' conduct actually served to chill and delay their lawsuit. *See id*. (*citing Silver v. Cormier*, 529 F.2d 161, 163 (10th Cir. 1976)) (holding "that [an] official's threat burdened and chilled the plaintiffs' right of access even if the threat was not actually effective").

[Doc. 241, pp. 28-29].

Presently, to make a submissible case at the summary judgment stage, Plaintiffs must now do more than allege that the Defendants' conduct caused them injury. They rather must show, through uncontroverted facts or genuine disputes on the record, that a jury could find a denial-of-access injury has indeed occurred. *Lewis v. Casey*, 518 U.S. 343, 356 (1996) (a showing of "actual injury" is required to prevail on a denial-of-access claim).[2]

Under this inquiry, an "injury" consists of two components. Because "the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong," Plaintiffs must point first to an "underlying claim, without which [they] cannot have suffered injury by being

---

[2] Accordingly, cases relied upon by Plaintiffs, which considered denial-of-access claims at earlier stages of litigation, are inapplicable. *See Alexander v. Macoubrie*, 982 F.2d 307, 308 (8th Cir. 1992) (finding that a denial-of-access claim was "not frivolous"); *Harrison*, 780 F.2d at 1428 (finding the plaintiffs had sufficiently pled a denial-of-access claim). While the Court has already determined that Plaintiffs alleged a denial-of-access claim, Plaintiffs must now show a genuine dispute of material fact to survive summary judgment.

5

shut out of court" and second to "a remedy that may be awarded as recompense but [is] not otherwise available." *Christopher*, 536 U.S. at 414-15.

In other words, as set out in *Christopher*, Plaintiffs must establish (1) an underlying cause of action for which (2) their access to the court has been burdened or denied, thus causing, as a result, an injury that (3) cannot be remedied through other means. *See id.*

The Court has examined all of the controverted and uncontroverted facts submitted by Plaintiffs, and it finds no evidence that the Defendants actually chilled, delayed, or otherwise impeded Plaintiffs from filing this lawsuit such that Plaintiffs have suffered injuries that cannot otherwise be remediated.

Plaintiffs primarily maintain that the coroner's inquest was conducted "for the purpose of putting up a greater barrier to Plaintiffs' pursuit of justice." [Doc. 294, p. 18]. Therefore, "[t]he impact of a jury issuing a finding that Piercy was not criminally liable following evidence and testimony presented during a quasi-criminal legal proceeding cannot be overstated, Plaintiffs' perseverance notwithstanding." *Id*. Yet even assuming the inquest was held with this purpose in mind, Plaintiffs *did* "persever[e]"—by filing this suit less than three months afterwards, in December 2014, well before the statute of limitations on any of their claims had expired.

As Plaintiffs emphasize, however, the Eighth Circuit has recognized that a police cover-up can give rise to a denial-of-access claim even where the statute of limitations has not run. [Doc. 270, p. 67] (*citing S.L. ex rel. Lenderman v. St. Louis Metro. Police Dep't Bd. of Police Comm'rs*, 725 F.3d 843 (8th Cir. 2013)). Yet *Lenderman* is

6

distinguishable. In that case, the plaintiff sued a police department, alleging that an officer—her boyfriend's mother—had arrested her outside of the department's jurisdiction without probable cause, and then conspired with other officers to create a false police report that altered the purpose, location, and circumstances of that arrest.

The Eighth Circuit affirmed a denial of qualified immunity. In doing so, it found that the plaintiff offered evidence establishing a denial-of-access claim, even though, ultimately, she gained access to the courts. First, the *Lenderman* court noted that it was unclear whether the false charges brought against the plaintiff had been expunged from her record. Second, the court observed that she had incurred $10,000 in hospital bills after getting beaten by an alleged co-conspirator, who, at the time, was trying to pressure the plaintiff to align her story with the false report. Third, the court found that the plaintiff had suffered mental injuries, as well, because the experience caused her to fear the police, demonstrate anxiety around officers, and complain of depressive symptoms. Finally, the Eighth Circuit remarked that the plaintiff's claim could proceed because she had an underlying cause of action—false arrest under Section 1983—and no alternative remedy against two of the officers allegedly involved. *Id*. at 852-53.

Plaintiffs have not shown any comparable injuries that either burdened their ability to file suit or resulted from such impairment. Unlike in *Lenderman*, Plaintiffs have not been targeted with false charges or retaliatory action of any kind. Plaintiffs further have not specifically identified any underlying claims that cannot be remedied through other causes of action. *See Christopher*, 536 U.S. at 417 (noting that the underlying claim must

7

be plainly identified in the complaint, in accordance with Federal Rule of Civil Procedure 8(a)).

Instead, Plaintiffs argue they have incurred "extraordinary expenses . . . in their attempt to obtain justice for Brandon's death" due to "costly hurdles put up by the MSHP in obtaining information related to the death of their son, as well as to the investigation into his death." [Doc. 270, pp. 52-53]. In his deposition, Craig Ellingson testified to the following expenses: (1) the cost of "traveling to the state of Missouri multiple times for depositions in this case," (2) the cost of "having to travel multiple times to the state of Missouri for legislative hearings," and (3) the cost of "having to travel to the state of Missouri to participate as a representative in the sunshine lawsuit, in the pursuit of information that was rightfully and lawfully available under the Freedom of Information Act that was withheld from [Plaintiffs]." [Doc. 275-40, p. 2].[3]

None of these expenses reflect a barrier to Plaintiffs' access. First, litigants ordinarily incur travel costs when participating in a lawsuit, particularly when they file that suit in a foreign state. Such expenses—which arise after a case is filed—plainly do not impede a party's right to file in the first place.[4] Second, Plaintiffs have not shown how the legislative hearings or state court case mentioned in Craig Ellingson's testimony had any bearing on their ability to access the courts. To the extent Plaintiffs are arguing

---

[3] Craig Ellingson also states that "for the first time in [his] adult life [he] ha[s] to be on prescription medication to be able to manage and function." [Doc. 275-40, p. 4]. Plaintiffs claim this as an injury for which they will seek damages at trial. But unlike in *Lenderman*, where the plaintiff's emotional injuries were caused by the alleged cover-up itself, Craig Ellingson's deposition states he is taking medication "because of the untimely and unlawful death of [Brandon]." *Id*.

[4] Likewise, while Plaintiffs blame Defendants for a "protracted and contentious litigation" that has cost them "significant time," this issue arose only *after* Plaintiffs' access to the courts was secured.

8

that their suit under Missouri's Sunshine Law sought predicate information necessary to file this case, the Court takes judicial notice of the timing of the two lawsuits: Plaintiffs filed their sunshine suit in state court on December 5, 2014, the same day they filed their civil suit in federal court. *See Knutson v. City of Fargo*, 600 F.3d 992, 1000 (8th Cir. 2010) (permitting judicial notice of a state court proceeding). Even reading Plaintiffs' argument liberally, therefore, the Court is unable to conclude that the information allegedly withheld caused any actual impediment.

The expenses cited by Plaintiffs are also compensable through other means. Plaintiffs, in fact, are seeking attorneys' fees and costs under 28 U.S.C. § 1988 to remedy the very issues they cite. The costs incurred outside of this litigation in Plaintiffs' state court lawsuit, meanwhile, can likewise be remedied through a motion for attorneys' fees in that action. *See* Mo. Rev. Stat. § 610.027.3 (a court may award costs and attorney's fees if it finds a purposeful violation of the Sunshine Law).

Accordingly, while the *Lenderman* plaintiff incurred costs, not otherwise compensable, as a direct result of the police's cover-up efforts, Plaintiffs in this case have only incurred general, compensable costs as the result of litigation they chose to initiate. A denial-of-access claim premised on these expenses cannot survive summary judgment.

Finally, in addition to lost expenses, Plaintiffs claim two other injuries stemming from the Defendants' alleged conspiracy. In their briefing and supplemental suggestions, Plaintiffs argue that "[n]othing was done during Stack's investigation to preserve information or documentation relevant to Piercy's actions, with at least one relevant video known to be permanently lost." [Doc. 272, p. 43]. Plaintiffs later contend they

9

"have suffered damages to their reputation due to the MSHP's persistent attempts to blame Brandon for his death." [Doc. 294, p. 24].

Yet Plaintiffs have not shown how these alleged injuries burdened their access to the courts and are not remediable through another cause of action. Crucially, Plaintiffs have not offered any evidence showing that their reputations were damaged. Plaintiffs further do not explain how the lost video amounts to a denial-of-access claim. To the extent that Stacks or another defendant spoiled relevant evidence, this action would impact only Plaintiffs' ability to prevail in their lawsuit, not their ability as an initial matter to file it. *See Wilson v. Meeks*, 52 F.3d 1547, 1557 (10th Cir. 1995) (distinguishing between "interference with discovery and interference with the filing of the complaint," with only the latter giving rise to an access claim). Plaintiffs remain free to file a motion for spoliation sanctions.

Consequently, given that Plaintiffs have not identified any actual injury that impeded their access to the courts or resulted from the Defendants' alleged conspiracy, they cannot establish a submissible conspiracy claim under Section 1983.

### B. Sections 1985 and 1986

Defendants McCullough, Echternacht, Barbour, Eberhard, Herndon, Harris, and Fick also move for summary judgment on Plaintiffs' claims under Sections 1985 and 1986, arguing there is no evidence that they exhibited class-based animus towards Plaintiffs. Plaintiffs have not contested this argument. Accordingly, Defendants McCullough, Echternacht, Barbour, Eberhard, Herndon, Harris, and Fick are granted summary judgment on Plaintiffs' Section 1985 and Section 1986 claims.

10

Case 2:14-cv-04316-NKL   Document 307   Filed 07/27/16   Page 10 of 11

## III. Conclusion

For the foregoing reasons, the Defendants' Motions for Summary Judgment [Docs. 228, 230, 233, 235] are granted as to Count III.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: July 27, 2016
Jefferson City, Missouri